**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| HARVEY E. WILLIAMS, OWEN WOODALL, VOLLIE GRIFFIN, MEL LAFEBRE, and CHRISTINA KENNEDY, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>MIDWESTERN PET FOODS, INC.,<br><br>　　　　　Defendant. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>CASE NO. 3:21-cv-22 |

Plaintiffs Harvey E. Williams, Owen Woodall, Vollie Griffin, Mel LaFebre, and Christina Kennedy ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendant Midwestern Pet Foods, Inc. ("Defendant"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, on the investigation of their counsel, and on information and belief as to all other allegations:

### NATURE OF THE ACTION

1.　　Plaintiffs Harvey E. Williams, Owen Woodall, Vollie Griffin, Mel LaFebre, and Christina Kennedy bring this case on behalf of themselves and other all consumers nationwide who bought Defendant's pet food products containing excessive levels of Aflatoxin, a toxin created by the mold *Aspergillus flavus*.  At high levels, aflatoxin can result in illness and death.

2.　　Defendant manufactures, warrants, advertises, and sells a variety of pet foods under

1

several brand names, including Sportmix CanineX, Earthborne Holistic, Pro Pac, Venture, Wholesomes, Sportmix, Sportstrail, Splash, Nunn Better and Unrefined.

3. On or around December 30, 2020, Defendant announced a recall of three formulas of cat and dog food products; specifically, Sportmix Energy Plus, Sportmix Premium High Energy and Sportmix Original Cat. According to Defendant's news announcement, tests indicated that the recalled products contained "levels of Aflatoxin that exceed acceptable limits." Aflatoxin is a toxic mold that can result in illness or death if ingested. On or around the same day, the Food and Drug Administration ("FDA") published news about Defendant's recall and reported that several dogs have fallen ill or died after consuming Defendant's Sportmix products.

4. On or around January 11, 2021, Defendant announced that it was expanding the list of recalled pet foods.[1] According to Defendant's January 11, 2021 news release, the recalled products were made with corn ingredients and were produced at its Chickasha Operations Facility in Oklahoma. The recalled products all expire on or before July 9, 2022 and are identified as:

- Pro Pac Adult Mini Chunk, 40 lb. bag

- Pro Pac Performance Puppy, 40 lb. bag

- Splash Fat Cat 32%, 50 lb. bag

- Nunn Better Maintenance, 50 lb. bag

- Sportstrail, 50 lb. bag

- Sportmix Original Cat, 15 lb. bag

- Sportmix Original Cat, 31 lb. bag

- Sportmix Maintenance, 44 lb. bag

- Sportmix Maintenance, 50 lb. bag

- Sportmix High Protein, 50 lb. bag

- Sportmix Energy Plus, 44 lb. bag

- Sportmix Energy Plus, 50 lb. bag

- Sportmix Stamina, 44 lb. bag

---

[1] https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin

- Sportmix Stamina, 50 lb. bag

- Sportmix Bite Size, 40 lb. bag

- Sportmix Bite Size, 44 lb. bag

- Sportmix High Energy, 44 lb. bag

- Sportmix High Energy, 50 lb. bag

- Sportmix Premium Puppy, 16.5 lb. bag

- Sportmix Premium Puppy, 33 lb. bag

The above products are hereinafter referred to as "Pet Food Products."

5.      Defendant has marketed and advertised the Pet Food Products as suitable for animals, has represented that the Pet Food Products provide targeted nutrition, and/or has guaranteed the Pet Food Products for taste and nutrition.  As alleged herein, Defendant's marketing and advertising of the Pet Food Products is false, deceptive, and misleading to reasonable consumers because the Pet Food Products contained dangerous or toxic levels of Aflatoxin, and thus were not as advertised, represented, or guaranteed.

6.      Plaintiffs and Class members would not have purchased the Pet Food Products had they known the Products contained, or might have contained, dangerous or toxic levels of Aflatoxin and/or that Defendant did not adequately test or inspect the Pet Food Products before selling them.

7.      Accordingly, Plaintiffs Harvey E. Williams bring this action and asserts claims on behalf of themselves and all other similarly situated persons (defined below) for negligence, negligent misrepresentation, fraud, and unjust enrichment.

<u>**JURISDICTION AND VENUE**</u>

8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Class exceeds 100; and many members of the proposed Class are citizens of different states than the Defendant.

9.      This Court has personal jurisdiction over Defendant because Defendant is headquartered in the State of Indiana, regularly conducts business in this Judicial District, and has extensive contacts with this forum.

3

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant transacts substantial business in this District.

11.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## THE PARTIES

### Plaintiffs

12.    Plaintiff Harvey E. Williams is a citizen of Georgia who resides in Baxley, Georgia. Plaintiff bought and fed Defendant's Sportmix Premium High Energy to his pet American Pitbull Terriers—Jamaica, Red and Dozer—who were healthy before consuming the Sportmix Premium High Energy food.  Plaintiff bought the Sportmix Premium High Energy from Tractor Supply in Baxley, Georgia in or around December 2020.  After consuming the product, Jamaica, Red and Dozer experienced sluggishness and gastrointestinal issues.  Jamaica and Red passed away suddenly and unexpectedly.  Jamaica had given birth to a litter of eight puppies shortly after Christmas and all the puppies also died suddenly and unexpected.  Dozer ultimately recovered after he stopped consuming the Sportmix Premium High Energy food.

13.    Before Defendant's recalls, Plaintiff Williams was not aware nor had any knowledge that Defendant's recalled Sportmix Premium High Energy food might contain excessive levels of Aflatoxin, or that Defendant did not adequately test or inspect the food before selling it.  Defendant did not disclose these material facts on the food label.  Plaintiff would not have purchased the Sportmix Premium High Energy food or fed it to Jamaica, Red, and Dozer had he known that the food might contain excessive levels of Aflatoxin, or that Defendant did not adequately test or inspect the food before selling.  In buying the Sportmix Premium High Energy food, Plaintiff relied on the representations on the food label.

14.    Plaintiff Owen Woodall is a citizen of North Carolina who resides in Dallas, North Carolina.  Plaintiff purchased and fed Defendant's Sportmix Energy Plus to his pet Treeing Walker—Billy—who was healthy before consuming the Sportmix Energy Plus food.  Plaintiff bought the Sportmix Energy Plus from Southern States in Dallas, North Carolina in or around November or December 2020.  After consuming the product, Billy experienced loss of appetite, weight loss,

gastrointestinal issues, and growths on his intestines and anus. Billy was treated by a veterinarian but was ultimately euthanized in early January 2021. Plaintiff incurred expenses in connection with veterinary treatment.

15.     Before Defendant's recalls, Plaintiff Woodall was not aware nor had any knowledge that Defendant's recalled Sportmix Energy Plus food might contain excessive levels of Aflatoxin, or that Defendant or that Defendant did not adequately test or inspect the food before selling it. Defendant did not disclose these material facts on the food label. Plaintiff would not have purchased the Sportmix Energy Plus food or fed it to Billy had he known that the food might contain excessive levels of Aflatoxin, or that Defendant did not adequately test or inspect the food before selling. In buying the Sportmix High Energy Plus food, Plaintiff relied on the representations on the food label.

16.     Plaintiff Vollie Griffin is a citizen of Texas, residing in Cuero, Texas. Plaintiff purchased and fed Defendant's Sportmix Energy Plus to her pet rottweiler—Bishop—who was healthy before consuming the Sportmix Energy Plus. Plaintiff bought the Sportmix Energy Plus from Ful-O-Pep in Cuero, Texas in or around December 2020. After consuming the product, Bishop experienced skin issues, gastrointestinal problems, and swelling of his testicles requiring him to be neutered. Bishop was seen by a veterinarian and prescribed medication for diarrhea but continues to suffer symptoms. Plaintiff incurred expenses in connection with veterinary treatment.

17.     Before Defendant's recalls, Plaintiff Griffin was not aware nor had any knowledge that Defendant's recalled Sportmix Energy Plus food might contain excessive levels of Aflatoxin, or that Defendant did not adequately test or inspect the food before selling it. Defendant did not disclose these material facts on the food label. Plaintiff would not have purchased the Sportmix Energy Plus or fed it to Bishop had she known that the food might contain excess levels of Aflatoxin, or that Defendant did not adequately test or inspect the food before selling. In buying the Sportmix Energy Plus, Plaintiff relied on the representations on the food label.

18.     Plaintiff Mel LaFebre is a citizen of California, who resides in Valley Springs, California. Plaintiff purchased and fed Defendant's Sportmix Energy Plus to his pet Pitbull—Bella— who was healthy before consuming the Sportmix Energy Plus. Plaintiff bought the Sportmix Energy Plus online from Tractor Supply in or about December 2020. After consuming the product, Bella

experienced loss of appetite and gastrointestinal problems and passed away suddenly and unexpectedly in January 2021. Plaintiff incurred veterinary expenses in connection with Bella's cremation.

19.     Before Defendant's recalls, Plaintiff Lafebre was not aware nor had any knowledge that Defendant's recalled Sportmix Energy Plus food might contain excessive levels of Aflatoxin, or that Defendant did not adequately test or inspect the food before selling. Defendant did not disclose these material facts on the food label. Plaintiff would not have purchased the Sportmix or fed it to Bella had he known that the food might contain excessive levels of Aflatoxin, or that Defendant did not adequately test or inspect the food before selling. In buying the Sportmix Energy Plus, Plaintiff relied on the representations on the food label.

20.     Plaintiff Christina Kennedy is a citizen of Pennsylvania who resides in Newtown, Pennsylvania. Plaintiff purchased and fed Defendant's Sportmix Stamina to her pet Great Dane—Blu—who was healthy before consuming the Sportmix Stamina. Plaintiff bought the Sportmix Stamina online from Chewy in or around December 2020. After consuming the product, Blu experienced lethargy, loss of appetite, weight loss, gum discoloration, and gastrointestinal issues. Blu was treated by a veterinarian and hospitalized. He developed aspirational pneumonia and was diagnosed with gastritis. In discharge paperwork, the veterinarian noted possible food toxicity in connection with Sportmix Stamina food and advised Plaintiff to feed Blu other food. Blu has improved since switching to a different food. Plaintiff incurred expenses in connection with Blu's veterinary treatment.

21.     Before Defendant's recalls, Plaintiff Kennedy was not aware nor had any knowledge that Defendant's recalled Sportmix Stamina food might contain excessive levels of Aflatoxin, or that Defendant did not adequately test or inspect the food before selling. Defendant did not disclose these material facts on the food label. Plaintiff would not have purchased the Sportmix Stamina or fed it to Blu had she known that the food might contain excessive levels of Aflatoxin, or that Defendant did not adequately test or inspect the food before selling. In buying the Sportmix Stamina, Plaintiff relied on the representations on the food label.

### Defendant Midwestern Pet Foods, Inc.

22.    Defendant Midwestern Pet Foods, Inc. is a domestic for-profit corporation registered in Indiana, with its principal place of business located in Evansville, Indiana. Defendant does business throughout the United States. Defendant's pet food products are sold throughout the United States at large and small retailers and online retailers, such as Amazon.com and Chewy.com.

## FACTUAL ALLEGATIONS

### The Pet Food Products

23.    Defendant manufacturers and sells dog and cat food, including canned and dried foods, and treats. Defendant touts itself as a family owned business since 1926. It claims that over the years, it has "learned a lot about family, pet companions and making high-quality pet food and treats."

24.    Defendants have several brands of pet food, including the following: Sportmix CanineX, Earthborne Holistic, Pro Pac Ultimates, Venture, Wholesomes, Sportmix, Unrefined, Sportstrail, Nunn better Hunter's Select, and Splash Fat Cat.

25.    Defendant markets, advertises, represents, and warrants its food products, including the Pet Food Products, as being fit for pets such as fish, cats, and dogs.  Many of its dried pet foods are sold in large bags up to 50 lbs.

26.     For example, with regarding to the Sportmix brand, on the front of the food product label Defendant includes an illustration of a dog, thereby indicating that the food is suitable for dogs. Defendant also advertises on the front of the Sportmix food label, "TARGETED NUTRITION FOR DOGS," in bold, conspicuous font.  Further, Defendant states on the front of the Sportmix dog food labels, "100% Guaranteed for Taste & Nutrition."  Image 1 below depicts a sample of the Sportmix dog food label at issue:

Image 1



27.     Defendant also touts several claimed benefits of its Sportmix dog food on its website. Sportmix is sold in different formulas, including: Energy Plus, High Energy Adult Chunk, High Energy, Maintenance, Stamina and Puppy Small Bits.  Each of these formulas is advertised as being nutritious for specific types of dogs.  For example, Energy Plus is "formulated for highly active dogs needed a maximum level of energy," such as dogs participating in competitive events or high stress working dogs.  All of the Sportmix formulas are advertised on Defendant's website as being "formulated to meet the nutrition levels established by the AAFCO Dog Food Nutrient Profiles" for maintenance, except for the Puppy Small Bites formula, which Defendant says is "formulated to meet the nutritional levels established by the AAFCO Dog Food Nutrient Profiles" for lactation/gestation and growth of dogs.

28.    Regarding the Sportmix cat food, on the front of the food product label Defendant includes an illustration of a cat, thereby indicating that the food is suitable for cats.  Defendant also advertises on the front of the Sportmix cat food label, "TARGETED NUTRITION FOR CATS AND KITTENS," in bold, conspicuous font.  Further, Defendant states on the front of the Sportmix cat food labels, "100% Guaranteed for Taste & Nutrition."  Image 2 below depicts a sample of the Sportmix cat food label at issue:

Image 2



29.    Defendant also touts several claimed benefits of its Sportmix cat food on its website. Sportmix for cats is sold in only one formula: Original Recipe.  Specifically, Defendant says the Original Recipe cat food is "formulated to ensure 100% complete and balanced nutrition for your cat, supplying essential nutrients need to promote strong muscles and bones, a glossy coat and bright

eyes." Further, Defendant claims that Sportmix cat food is "formulated to meet the nutrition levels established by the AAFCO Dog [sic] Food Nutrient Profiles for all life states."

30.    As to the Nunn better dog food, on the front of the food product label Defendant includes an illustration of a dog, thereby indicating that the food is suitable for dogs. Defendant also advertises on the front of the Nunn better dog food label, "Complete & Balanced Nutrition," and "100% Guaranteed." Image 3 below depicts a sample of the Nunn better dog food label at issue:

Image 3



31.    Regarding the Pro Pac Dog food, on the front of the food product label Defendant includes an illustration of a dog, thereby indicating that the food is suitable for dogs. Defendant also advertises on the front of the Pro Pac Dog food label, "100% Guaranteed Taste & Nutrition." Image 4 below depicts a sample of the Pro Pac Dog food label at issue:

Image 4



32.    Defendant's Sportstrail dog food on the front of the food label includes an illustration of hunting dogs, thereby indicating that the food is suitable for dogs.  Image 5 below depicts a sample of the Sportstrail dog food label at issue:

//

//

Image 5



33.     Defendant's Splash Fat Cat fish food on the front of the food label includes an illustration of a fish with the words below "For All Fresh Water Fish," thereby indicating that the food is suitable for all fresh water fish.  Image 6 below depicts a sample of the Splash Fat Cat fish food label at issue:

//

//

Image 6



34.     Defendant also represents on its website for Sportmix that it has a board-certified nutritionist on staff who creates its pet food recipes.[2]

35.     Moreover, in a published interview with Defendant's marketing coordinator, Katie McNulty, McNulty stated the Defendant's pet food products are manufactured in four "state-of-the-art" kitchens in Indiana, Illinois, Oklahoma, and New York.  McNulty also emphasized that the company does not co-manufacture foods for other companies.  "This gives consumers peace of mind

---

[2] https://www.sportmix.com/faq/

as we can focus on crafting wholesome recipes, choosing trustworthy ingredient sources, and producing safe and nutritious food."

## Pet Foods with Aflatoxins are Unsafe and Dangerous

36.    Mycotoxins are toxins naturally produced by molds (fungi) and grow in several foods, such as cereals, dried fruits, nuts, and spices.  According to a study conducted by the company Biomin in 2010, mycotoxins are, often, present in animal feed and commodities.  Biomin's study showed that out of 3,300 samples tested during a 12-month period in 2010, 78% tested positive for mycotoxin.

37.    There are several hundreds of different types of mycotoxins, but one of the most dangerous to humans and animals is Aflatoxin.  Aflatoxins are produced by the molds *Aspergillus flavus* and *Aspergillus parasiticus*, which grow in grains, soil, and hay.  Crops that are often affected by Aflatoxins are cereal (corn, sorghum, wheat and rice), oilseeds (soybean, sunflower, and cotton seeds), spices (chili peppers, ginger, turmeric, and coriander) and tree nuts (almond, walnut, pistachio and coconut).

38.    Aflatoxin affects the liver of animals (more commonly dogs than cats) and is also known as a cancer-causing agent.  Because Aflatoxin affects mainly the liver, gastrointestinal and reproductive issues may arise from consumption of the toxin.  Symptoms of high levels of Aflatoxin consumption include jaundice, anemia, fever, lethargy, bloody diarrhea, severe vomiting, and discolored urine.

39.    Aflatoxin ends up in commercial pet food because of the ingredients that are used, such as corn, rice, wheat cereals or soybeans.  Processed pet foods containing corn (such as corn flour, whole grain corn, and corn gluten meal) are likely to become contaminated with Aflatoxin.  The toxin often contaminates agricultural crops, like corn, before they are harvested due to certain conditions like high temperatures, excessive drought periods, or pre-harvest contamination by insects.  Aflatoxin may also develop if crops are wet for a long time, or they may develop on stored crops where there is moisture resulting in mold development.  An absence of visible mold does not guarantee freedom from Mycotoxins, including Aflatoxins.

40.    The presence of Aflatoxins in pet foods is well known.  In 1998, 2005, 2011, and 2013, there were extensive recalls due to the Aflatoxins in dog and cat foods.  In 2020, several pet foods

were reported as having extensive Aflatoxins.  For example, in September 2020, Sunshine Mills, Inc. identified and recalled certain brands of pet food made with corn as containing high levels of Aflatoxin.  It later expanded that recall in October 2020 to include 15 brands.

### The Recalls

41.     On or around December 30, 2020, Defendant announced a recall, in cooperation with the FDA, of five cat and dog food products it had manufactured that were distributed nationally to retail stores and online retailers. Defendant issued the recall based on tests showing that the following Pet Food Products contained unacceptable levels of Aflatoxin:

- 50# Sportmix Energy Plus Lots Exp. 03/02/22/05/L2, 03/02/22/05/L3, 03/03/22/05/L2
- 44# Sportmix Energy Plus Lots 03/02/22/L3
- 50# Sportmix Premium High Energy Lots 03/03/22/05/L3
- 44# Sportmix Premium High Energy Lots 03/03/22/05/L3
- 31# Sportmix Original Cat Lots 03/03/22/05/L3

42.     In the news release announcing the recall, Defendant instructed pet parents not to "feed the recalled products to your pets or any other animals.  Destroy the products in a way that children, pets, and wildlife cannot access them.  Wash and sanitize pet food bowls, cups and storage containers."

43.     On or around January 11, 2021, Defendant expanded the December 30, 2020 recall considerably.  Specifically, Defendant expanded the recall to cover all corn products with expiration dates before 07/09/22 that were produced at the company's Chickasha Operations Facility in Oklahoma.  As of January 11, 2021, Defendant's recall covers a total of 20 different cat and dog food products distributed and sold nationally.   The products are:

- Pro Pac Adult Mini Chunk, 40 lb. bag
- Pro Pac Performance Puppy, 40 lb. bag
- Splash Fat Cat 32%, 50 lb. bag
- Nunn Better Maintenance, 50 lb. bag
- Sportstrail 50

- Sportmix Original Cat, 15 lb. bag
- Sportmix Original Cat, 31 lb. bag
- Sportmix Maintenance, 44 lb. bag
- Sportmix Maintenance, 50 lb. bag
- Sportmix High Protein, 50 lb. bag
- Sportmix Energy Plus, 44 lb. bag
- Sportmix Energy Plus, 50 lb. bag
- Sportmix Stamina, 44 lb. bag
- Sportmix Stamina, 50 lb. bag
- Sportmix Bite Size, 40 lb. bag
- Sportmix Bite Size, 44 lb. bag
- Sportmix High Energy, 44 lb. bag
- Sportmix High Energy, 50 lb. bag
- Sportmix Premium Puppy, 16.5 lb. bag
- Sportmix Premium Puppy, 33 lb. bag

44.     Defendant's expanded recall was issued after more than 70 dogs died and another 80 fell ill, reportedly from consuming the Pet Food Products.   At the time of the first recall in December 2020, the FDA was alerted to reports that about 28 dogs had died and eight others became ill after consuming the Pet Food Products.

45.     The FDA has warned retailers and distributors to immediately remove recalled lots from shelves and their inventory and warned retailers and distributors against selling or donating them.

46.     For pets that have consumed the Pet Food Products, the FDA has identified symptoms of aflatoxin poisoning as including "sluggishness, loss of appetite, vomiting, jaundice (yellowish tint to the eyes, gums, or skin due to liver damage), and/or diarrhea.  The FDA instructed pet parents whose pets have exhibited the foregoing signs to contact their veterinarian immediately.

47.     Further, the FDA has instructed pet parents to stop feeding the recalled products to pets and other animals and to destroy the recalled food such that children, pets, and wildlife do not have access.  Additionally, the FDA has instructed pet parents to wash and sanitize food bowls, cups, and

storage containers, and to always wash and sanitize hands after touching any of the recalled foods or utensils that may have come into contact with the recall food.

48.      As a result of buying Defendant's contaminated Products, Plaintiffs and all others similarly situated consumers have incurred substantial expenses, including the cost of the Pet Food Products, veterinary bills to address the adverse health issues associated with their dogs consuming Defendant's Pet Food Products, and other related expenses.

## CLASS ACTION ALLEGATIONS

49.      Plaintiffs bring this action on behalf of themselves and on behalf of the following proposed Class initially defined as follows: **All persons residing in the United States who purchased for personal, family, or household use, Defendant's pet food products containing corn with expiration dates on or before July 9, 2022 manufactured in its Chickasha, Oklahoma facility ("Nationwide Class")**.

50.       Plaintiffs also bring this action on behalf of themselves and a state class defined as follows: **All persons residing in California who purchased for personal, family, or household use, Defendant's pet food products containing corn with expiration dates on or before July 9, 2022 manufactured in its Chickasha, Oklahoma facility ("California State Class").**

51.      Excluded from the proposed Nationwide and California Classes (collectively referred to herein as "Class" unless otherwise noted) are Defendant, their parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

52.      Plaintiffs reserve the right to re-define any of the Class definitions prior to class certification and after having the opportunity to conduct discovery. Unless otherwise noted, the proposed Classes will be collectively referred to herein as the "Class."

53.      This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

**Numerosity of the Proposed Class**

**(Fed. R. Civ. P. 23(a)(1))**

54.     The members of the Class are so numerous that their individual joinder would be impracticable. The Class comprises at least hundreds of thousands of consumers. The precise number of Class members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice.

**Predominance of Common Questions of Fact and Law**

**(Fed. R. Civ. P. 23(a)(2); 23(b)(3))**

55.     Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members of the Class. The common legal and factual questions include, without limitation:

(a)     Whether Defendant knew or should have known that the Products contained unacceptable levels of Aflatoxin that rendered its Pet Food Products unsafe and unsuitable for dog consumption;

(b)     Whether Defendant failed to employ quality control measures and failed to properly test and/or inspect its Pet Food Products before distribution and sale;

(c)     The date on which Defendant learned or should have learned of the unacceptable levels of Aflatoxin in its Pet Food Products;

(d)     Whether Defendant made affirmative misrepresentations and/or false and misleading statements regarding the Pet Food Products;

(e)     Whether Defendant failed to disclose material facts regarding the Pet Food Products;

(f)     Whether Defendant was negligent in producing the Pet Food Products;

(g)     Whether Defendant made negligent misrepresentations in connection with the distribution and sale of the Pet Food Products;

(h)     Whether Defendant breached express warranties;

(i)     Whether Defendant breached the implied warranty of merchantability;

(j)     Whether Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

(k)     Whether Defendant violated the state consumer protection statutes alleged herein;

(l)     Whether Defendant was unjustly enriched;

(m)     The nature of the relief, including damages and equitable relief, to which Plaintiffs and the members of the Class are entitled; and

(n)     Whether Defendant is liable for attorneys' fees and costs.

## Typicality of Claims

### (Fed. R. Civ. P. 23(a)(3))

56.     Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class members, purchased Defendant's Products, suffered damages as a result of those purchases, and seeks the same relief as the proposed Class members.

## Adequacy of Representation

### (Fed. R. Civ. P. 23(a)(4))

57.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class and they have retained counsel competent and experienced in complex class action and consumer litigation.

58.     Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

## Superiority of a Class Action

### (Fed. R. Civ. P. 23(b)(3))

59.     A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  There is no special interest in Class members individually controlling the prosecution of separate actions.  The damages suffered by individual members of the Class, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. And, even if members of the Class themselves could afford such individual

litigation; the court system could not, given the thousands or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief

**(Fed. R. Civ. P. 23(b)(1) and (2))**

60.    In the alternative, this action may properly be maintained as a class action, because:

(a)    the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

### Issue Certification

**(Fed. R. Civ. P. 23(c)(4))**

61.    In the alternative, the common questions of fact and law, set forth in Paragraph 46, are appropriate for issue certification on behalf of the proposed Class.

### FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiffs, the National Class and California Class)**

62.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

63.     Defendant owed a duty of care to Plaintiffs and the Class members. Defendant breached that duty.

64.     Defendant is a manufacturer of the Pet Food Products purchased by Plaintiffs and Class members.

65.     Defendant had a duty to take reasonable care in the manufacture, formulation, testing, inspection, marketing, distribution, and the sale of its Pet Food Products, including identifying all affected Pet Food Products and/or to promptly recall and remove all of the affected Pet Food Products from the marketplace, including taking all appropriate remedial action.

66.     By the actions and omissions alleged herein, Defendant breached its duty. Among other things, Defendant manufactured Products containing unacceptable levels of Aflatoxin that rendered its Pet Food Products unsafe and unsuitable for dog consumption.

67.     As a result of Defendant's breaches and violations, Plaintiffs and Class members suffered harm.

68.     Defendant's negligence was a substantial factor in the harm caused to Plaintiffs and Class members.

69.     At all relevant times, Plaintiffs and members of the Class acted lawfully and with due care and did not contribute to the injuries suffered by its pets.

70.     Accordingly, Plaintiffs and members of the Class are entitled to damages and other appropriate relief, as prayed for hereunder.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
### (On Behalf of Plaintiffs, the National Class, and the California Class)

71.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

72.     Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

73.     Defendant misrepresented material facts concerning the safety, suitability, and quality of its Pet Food Products, including that the Pet Food Products were suitable for pets, that they provided targeted nutrition and were 100% guaranteed for taste and nutrition.

74.    Defendant had no reasonable grounds for believing that its misrepresentations were true.

75.    Among other things, Defendant represented that its Products were of high quality, healthy, safe, and suitable for pet consumption. Defendant knew or should have known but failed to disclose that, contrary to its representations, its Pet Food Products contained dangerous levels of Aflatoxin that would cause injury to pets, such as vomiting, loss of appetite, sluggishness, jaundice (yellowish tint to the eyes, gums, or skin due to liver damage), diarrhea, or can lead to serious health issues including death.

76.    Defendant made such misrepresentations with the intent to induce Plaintiffs and Class members to rely on its misrepresentations and purchase its Pet Food Products containing dangerous levels of Aflatoxin.

77.    Plaintiffs and Class members had no knowledge of the falsity of Defendant's representations and reasonably believe them to be true. In justified reliance on Defendant's misrepresentations, Plaintiffs and Class members purchased and fed their pets the Pet Food Products containing dangerous levels of Aflatoxin.

78.    As a direct and proximate consequence, Plaintiffs and Class members suffered harm. Among other things, they would not have purchased Defendant's Pet Food Products, or would have paid less had they known of the presence, or the potential presence, of dangerous levels of Aflatoxin.

79.    Plaintiffs and Class members are therefore entitled to damages and relief, as prayed for hereunder.

### THIRD CAUSE OF ACTION
**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On Behalf of Plaintiff Mel LaFebre and the California Class)**

80.    Plaintiff Mel LaFebre hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

81.    Defendant's business practices as complained of herein violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

82.    Defendant's practices constitute "unlawful" business practices in violation of the UCL

because, among other things, they violate warranty laws.

83.    Defendant's actions and practices constitute "unfair" business practices in violation of the UCL, because, among other things, they are immoral, unethical, oppressive, unconscionable, unscrupulous or substantially injurious to consumers, and/or any utility of such practices is outweighed by the harm caused by consumers.

84.    Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, Defendant's misrepresentations were likely to deceive reasonable consumers.  Among other things, Defendant made affirmative misrepresentations regarding the Pet Food Products.  Specifically, Defendant represented that the Pet Food Products were suitable for animals, represented that the Pet Food Products provided targeted nutrition, and guaranteed the products for taste and nutrition.  Defendant, however, failed to disclose material facts, namely, that the Pet Food Products contained, or might contain, Aflatoxins in excessive levels resulting in injury to pets.  Defendant had a duty to disclose these material facts because the Pet Food Products were unsafe and because Defendant made affirmative representations about the Products.  If Plaintiff had known that the Products contained excessive levels of Aflatoxins that was toxic to pets, Plaintiff would not have purchased the Products.

85.    As a result of Defendant's wrongful business practices, Plaintiff lost money and has suffered injury-in-fact.

86.    Defendant's wrongful business practices present an ongoing and continuing threat and should be enjoined.

87.    Plaintiff and the California Class seek an order enjoining Defendant's unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available. The claims for equitable relief are brought in the alternative should Plaintiffs not have an adequate remedy at law.

88.    Accordingly, Plaintiff and members of the California Class are entitled to judgment and equitable relief.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Nationwide Class)

89.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

90.     Plaintiffs and members of the Class conferred a benefit upon Defendant. Plaintiffs and members of the Class paid money for Defendant's Pet Food Products that were not as represented; they were not suitable for pets, that did not provided targeted nutrition for pets, and/or that did not meet Defendant's guarantees promising taste and nutrition.  Defendant has unjustly retained the benefits conferred upon Plaintiffs and Class members.

91.     Defendant retained that benefit under circumstances that make it inequitable for it to retain such benefit. Specifically, Defendant retained that benefit even though its Pet Food Products contain, or may contain, excessive levels of Aflatoxin that render its Pet Food Products unsafe and unsuitable for pet consumption.  If Plaintiffs and Class members had known the true nature of the Pet Food Products, they would not have paid money for them or would have paid less.

92.     Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, pray for relief and judgment against Defendant as follows:

A.     Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as a representative of the Class, and designating Plaintiffs' counsel as Class Counsel;

B.     Awarding Plaintiffs and the Class compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

C.     Awarding Plaintiffs and the Class appropriate relief, including actual damages;

D.     For declaratory and equitable relief, including restitution and disgorgement;

E.     For an order enjoining Defendant from continuing to engage in the wrongful acts and

practices alleged herein;

      F.      Awarding Plaintiffs and the Class the costs of prosecuting this action, including expert witness fees;

      G.      Awarding Plaintiffs and the Class reasonable attorneys' fees and costs as allowable by law;

      H.      Awarding pre-judgment and post-judgment interest; and

      I.      Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: January 28, 2021              **YOUNG & YOUNG**


              By: /s/ *John P. Young*
                  John P. Young, # 14099-49
                  128 N. Delaware St., 3rd Floor
                  Indianapolis, Indiana 46204
                  Telephone: (317) 639-5161
                  Facsimile: (317) 639-4978
                  john@youngandyoungin.com

                  Rosemary M. Rivas, (*Pro Hac* forthcoming)
                  David Stein, (*Pro Hac* forthcoming)
                  **GIBBS LAW GROUP LLP**
                  505 14th Street, Suite 110
                  Oakland, California 94612
                  Telephone: (510) 350-9700
                  Facsimile: (510) 350-9701
                  rmr@classlawgroup.com
                  ds@classlawgroup.com

                  *Attorneys for Plaintiffs and the Proposed Class Members*